IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| BNSF Railway Company,<br><br>                  Plaintiff,<br><br>vs.<br><br>Progress Rail Services Corporation,<br><br>                  Defendant. | Civil No. 3:13-cv-80<br><br>**ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

## **INTRODUCTION AND SUMMARY OF DECISION**

Before the court are two motions for summary judgment[1] brought by Defendant, Progress Rail Services Corporation ("Progress") and three motions for partial summary judgment[2] brought by Plaintiff, BNSF Railway Company ("BNSF"). Progress's original motion for summary judgment[3] is based on its contention that 49 U.S.C. § 20106 preempts any state law cause of action by BNSF. In its second motion for summary judgment[4], Progress argues that, even if the claims are not preempted by federal statute, Progress cannot be held liable to any state standard of care but could only be held liable to a federal standard of care.

BNSF moves for a partial summary judgment finding that Progress is a "manufacturer" under North Dakota state liability law[5], for partial summary judgment on

---

[1] Doc. #62; Doc. #79.

[2] Doc. #77; Doc. #81; and Doc. #83.

[3] Doc. #62.

[4] Doc. #79.

[5] Doc. #77.

1

the issue of BNSF's negligence[6], and for partial summary judgment finding that there were no superseding or intervening causes relieving Progress of liability.[7]

After careful review of the record, the court finds that there are genuine issues of material fact that require the court to **DENY** Progress's motions[8] for summary judgment. As Progress is a manufacturer under North Dakota law, the court **GRANTS** BNSF's motion for partial summary judgment[9] on that issue. Because there exist genuine issues of material fact, BNSF's remaining motions[10] for partial summary judgment are **DENIED.**

## DISCUSSION

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."[11] This court is required to grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12] The court will not decide credibility of testimony or weigh the evidence in ruling on a motion for

---

[6] Doc. #81.

[7] Doc. #83.

[8] Doc. # 62 and Doc. #79.

[9] Doc. #77.

[10] Doc. #81 and Doc. #83.

[11] Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811 (8th Cir. 2010)

[12] Duluth, Winnipeg and Pacific Railway Co. v. City of Orr, 529 F.3d 794, 797 (8th Cir. 2008) (citing Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004)).

summary judgment.[13]

## I. Whether the preemption provisions of the Federal Railroad Safety Act (FRSA) require dismissal.

State laws regarding railroad safety are generally preempted by federal law if the Secretary of Transportation has adopted a regulation covering similar subject matter.[14] The court has previously held that the North Dakota negligence law alleged by BNSF is substantially subsumed by federal regulations regarding axles and wheels.[15] However, the court denied Progress's rule 12 motion to dismiss because additional discovery was necessary in order to address whether genuine issues of material fact exist which would arguably except this action from preemption under one or more of the provisions of 49 U.S.C. § 20106(b).[16] Specifically, the court held "the common law negligence claim asserted by BNSF is preempted by the FRSA, unless the claim asserted falls within one of the three express exceptions to preemption found in 49 U.S.C. § 20106."[17]

49 U.S.C. § 20106(b), entitled "**Clarification regarding State law causes of**

---

[13] In re Wholesale Grocery Products Antitrust Litigation, 752 F.3d 728 (8th Cir. 2014) ((citing Coker v. Ark. State Police, 734 F.3d 838, 843 (8th Cir. 2013) ("Making credibility determinations or weighing evidence in this manner is improper at the summary judgment stage.")).

[14] 49 U.S.C. § 20106(a).

[15] Doc. #25, p. 5.

[16] Doc. #25, pp. 5-6.

[17] Doc. #25, p. 5. Progress continues to argue, as it did in its motion for rule 12 dismissal, that it is not a railroad subject to the standards set form in part 49 C.F.R, Part 215. However, 49 C.F.R. § 215.7 makes it clear that the regulations provide standards for, among other persons, "any independent contractor providing goods or services to a railroad . . . and any employee of such, owner, manufacturer, lessor, lessee, or independent contractor" who "violates any requirement of this part or causes a violation on any such requirement[.]" Accord Union Pacific Railroad Co. v. Progress Rail Services Corp., No. 8:10-cv-00038-LSC-FG3, Doc. #72, slip op. at 7 of 9 (D. Neb. December 9, 2010). In any case, if the FRSA contained no regulations covering Progress, there would be no federal regulations which could subsume any state law cause of action, and the preemption argument would fail accordingly.

**action"** provides:

> (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party –
> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters) . . . covering the subject matter as provided in subsection (a) of this action;
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by [the Secretary]; or
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
> . . .

This 2007 Amendment to the FRSA makes clear that the "FRSA does not preempt claims . . . that allege" a failure "to comply with a Federal standard of care."[18]

After the court denied the motion to dismiss, BNSF filed an amended complaint[19] which continued to allege state negligence and strict liability but alleged additional facts which, if grounded in evidence, could prove violations of the federal standards found at 49 C.F.R. §§ 215.103 and 215.105, as well as violations of Progress's own rules and standards.[20]

As this is a rule 56 motion, in order to decide the preemption issue, the court must determine whether BNSF has presented a genuine issue of material fact on whether Progress violated the federal regulations. If from the record the court finds, as a matter of law, that Progress did not violate any federal regulations, then the court must dismiss the action as preempted by federal law.

The wheel set at issue in this case was reconditioned by Progress for the purposes of

---

[18] Grade v. BNSF Railway Co., 676 F.3d 680, 685-86 (8th Cir. 2012).

[19] Doc. #51.

[20] Doc. #51, ¶ 15.

preparing it for sale to a Class 1 railroad for use on its rail cars.[21] The shop at which Progress prepared the wheel set is approved by the Association of American Railroads (AAR) and, to maintain such approval, must abide by practices set forth by the AAR.[22] There is evidence in the record that could support a finding that, in preparing the wheel set for use by the railroads, Progress did not properly follow the standards provided by the AAR.[23]

Because BNSF has presented evidence to show there is a genuine issue of material fact as to whether Progress violated federal safety regulations, the court cannot find as a matter of law that the claim of negligence under North Dakota law is preempted by the FRSA.[24] Progress's first motion for summary judgment[25] is denied.

## II. Whether North Dakota state negligence law applies to this action.

### A. There is no federal cause of action.

In its second motion for summary judgment, Progress argues that it "could only be held liable pursuant to a federal standard of care . . . ."[26] The court does not agree.

49 U.S.C. § 20106(c) specifically provides: "Nothing in this section creates a Federal

---

[21] See generally, Doc. #67-5 [Videotaped Deposition of Robert Wolbert, March 31, 2015], including pp. 10-16, 45-48.

[22] Doc. #67-5, p. 150, line 23 to p. 153, line 25.

[23] See generally, Doc. #67-1 [Videotaped Deposition of Alicia Bitner, August 19, 2015], including p. 257, line 21 - p. 262, line 20; Doc. #67-4 [Videotaped Deposition of Huseyn Guzel, January 12, 2016], including pp. 109-121, 190; and Doc. 80-2 [Videotape Deposition of Jason Boyd].

[24] Accord Bates v. Missouri & Northern Arkansas Railroad Co., Inc., 548 F.3d 634, 637 (8th Cir. 2008) ("Development of the facts may be necessary to adjudicate MNA's affirmative defense of preemption.").

[25] Doc. #62.

[26] Doc. #79.

cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action." The Eighth Circuit Court of Appeals has made clear that the clarification language in 49 U.S.C. § 20106(b) does not create a private cause of action under federal law, but merely clarifies when the FRSA preempts the application of state law.[27]

Preemption may be an affirmative defense to the state tort claims.[28] However, absent preemption, state negligence law applies to this diversity action regarding a derailment in North Dakota.

> **B.    Choice of law analysis requires that the court apply North Dakota law.**

Having determined that state negligence law applies, the court must determine which state's law it must apply. "In diversity cases, federal courts apply the choice of law rules of the forum state."[29] North Dakota courts use a "significant contacts" analysis in choice of law cases.[30] The aim in a significant contacts analysis is to give effect to "'the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation.'"[31]

---

[27] Bates v. Missouri & Northern Arkansas Railroad Co., Inc., 548 F.3d 634 (8th Cir. 2008); Lundeen v. Canadian Pacific Railway Co., 532 F.3d 682 (8th Cir. 2008). Accord Hampton v. R.J. Corman Railroad Switching Co., LLC, 683 F.3d 708, 713-714 (6th Cir. 2012) (citing Bates and Lundeen and stating: "We find nothing to indicate that Congress did not mean what it wrote in § 20106, and we decline to expand the purposely limited complete-preemption doctrine to the FRSA."). The court notes that even though there is no federal question in issue, the court has jurisdiction under 28 U.S.C. § 1332, based on complete diversity of citizenship.

[28] Bates, 548 F.3d 634, 637.

[29] Gateway Western Ry. Co. v. Morrison Metalweld Process Corp., 46 F.3d 860, 863 (8th Cir. 1995).

[30] Nodak Mutual Ins. Co. v. Wamsley, 2004 ND 174, ¶ 13, 687 N.W.2d 226.

[31] Id. at ¶ 11 (citing Issendorf v. Olson, 194 N.W.2d 750, 754 (N.D. 1972)).

North Dakota courts use a two-pronged analysis.[32] First, the court is required to identify all of the relevant contacts "'which might logically influence the decision of which law to apply.'"[33] Next the court applies the "choice-influencing factors" enunciated by Robert A. Leflar.[34] Those factors are: a) predictability of results, b) maintenance of interstate and international order, c) simplification of the judicial task, d) advancement of the forum's governmental interests, and e) application of the better rule of law.[35] The relative importance of the Leflar factors "'varies according to the area of the law involved.'"[36]

Progress argues that the court must apply Nebraska law, while BNSF argues for applying North Dakota law. The court must first determine the contacts which might influence the choice of law analyisis.[37] BNSF is a Delaware corporation, whose prinicpal place of business is in Texas, that does business in several states, including North Dakota. Progress is an Alabama corporation. The wheel set at issue was refurbished and sold by Progress at its plant in Sidney, Nebraska.[38] The axle was delivered to Progress's customer, Detroit Edison, at Alliance, Nebraska, where it was installed on a rail car operated by Detroit Edison[39]. BNSF's parent corporation, Berkshire Hathaway, has its principal place

---

[32] Id. at ¶ 13.

[33] Id. (citing Daley v. American States Preferred Ins. Co., 1998 ND 225, ¶ 10, 587 N.W.2d 159).

[34] Id. at ¶¶ 11 and 13 (citing Robert A. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L. Rev. 267, 282 (1966)).

[35] Id. at ¶ 11.

[36] Nodak Mutual Ins. Co. v. Wamsley, 2004 ND 174, ¶ 12 (citing Plante v. Columbia Paints, 494 N.W.2d 140, 141-42 (N.D. 1992)).

[37] Id. at ¶¶ 15-16.

[38] Doc. #80-1, ¶ 3.

[39] Doc. #80-1, ¶ 3.

of business in Omaha, Nebraska.[40]

The axle, which "performed in various locations in interchange service" since it left Progress's Nebraska facility, failed in North Dakota.[41] The failure of the axle is alleged to have caused the derailment in Jamestown, North Dakota.[42] The derailment caused property damage in North Dakota. Workers from Jamestown, Medina, and Valley City, North Dakota, were called in to assist in clean-up and repairs in order to get the track ready for train travel.[43] Investigation of the accident would have involved local law enforcement personnel and other local agencies. Had anyone been injured as a result of the derailment, the injuries would have occurred in North Dakota, likely requiring use of emergency crews and medical providers located in North Dakota. The alleged delays in rail service were to trains traveling through North Dakota. The repairs at issue were done in North Dakota, involving work crews in North Dakota, on property located in North Dakota.

Progress was aware that its work on the axle which was sold to Detroit Edison was for use on Class I railroads[44] for interstate shipping.[45] Progress was on notice that axles it reconditioned would be installed on rail cars that would travel in North Dakota, as well as other states.

Having determined the influencing contacts, the court applies the following Leflar

---

[40] Doc. #80-1, ¶ 9.

[41] Doc. #80-1, ¶ 4.

[42] Doc. #64-2.

[43] Doc. 64-3.

[44] Doc. #67-5, p. 46, line 18 to p. 47, line 4.

[45] Doc. #67-5, p. 197, line 23 to p. 198, line 3.

choice-influencing considerations.[46]

**1. Predictability of Results**

Predictability of results "includes the ideal that parties to a consensual transaction should be able to know at the time they enter upon it that it will produce, by way of legal consequences, the same socioeconomic consequences . . . regardless of where the litigation occurs."[47] It is especially important in situations when parties are "likely to give advance thought to the legal consequences of their transactions."[48] But the "purpose of protecting parties' justified expectations ought to be served 'even when the parties do not think about choice of law.'"[49]

This case involves federal regulations governing the manufacture and maintenance of railroad equipment. Both parties are well aware of those regulations and are required to abide by them. Both parties are further on notice that if they violate the federal regulations, they subject themselves to various local state statutes and common law tort claims.

BNSF operates trains throughout the United States. Progress Rail sells its products to Class I railroads in the United States and Canada. Progress Rail is clearly put on notice that its axles will be used on rail cars traveling throughout the United States, including North Dakota. The parties, whether they thought about the choice of law or not, were clearly on notice that they could be subject to North Dakota law if an accident or derailment

---

[46] Id. at ¶ 16.

[47] Nodak Mutual Ins. Co. v. Warmsley, 2004 ND 174, ¶ 16, 687 N.W.2d 228.

[48] Id. at ¶ 17.

[49] Id. (citing Leflar et al., American Conflicts of Law, § 103, p. 290).

9

would occur in North Dakota.

## 2. Maintenance of Interstate and International Order

If maintaining interstate order is in any way at issue in this case, it favors applying North Dakota law. As indicated in the above analysis of the preemption issue, Congress has clearly indicated that, when federal regulations are violated, state tort law will apply. The court defers to Congress on this issue. The maintenance of Interstate and International order favors the application of North Dakota law.

## 3. Simplification of the Judicial Task

This court is capable of applying the law of either Nebraska or North Dakota. Simplification of the judicial task is not an issue.

## 4. Advancement of Forum's Governmental Interest

"A state's governmental interest in a choice-of-law case is discoverable by (a) identifying the factual contacts which the litigated transaction had with that state, then (b) determining whether those contacts give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case."[50]

Here the most important facts point to North Dakota governmental interests. The derailment occurred in North Dakota, putting North Dakota property and persons at risk. Rail travel in North Dakota was interrupted, implicating the shipping of North Dakota goods and commodities within the state and in interstate commerce. North Dakota citizens were involved in investigating the derailment, in the ensuing clean-up, and in reparations. And, as indicated above, Congress has indicated that, when the federal regulations are

---

[50] Nodak Mutual Ins. Co. v. Wamsley, 2004 ND 174, ¶ 21, 687 N.W.2d 226, 234.

violated, local tort law will not be preempted.

### 5. Application of the Better Rule of Law

In its brief, Progress indicates that "this factor does not strongly favor application of either state's law."[51] BNSF states: "The Defendant has not substantially described what Nebraska law actually is for product liability for manufacturers in its position, and as a result, this factor cannot possibly weigh in favor of the Defendant."[52] The court agrees that the record does not contain facts to support favoring North Dakota law or Nebraska law as the better rule of law.

The appropriate "significant contacts" analysis favors application of North Dakota law. The court will apply North Dakota law.

There is no federal cause of action, and North Dakota law applies. Progress's second motion for summary judgment is, in all things, denied.

### III. Whether Progress rail is, as a matter of law, a "manufacturer" under North Dakota products liability law.

BNSF moves the court for partial summary judgment[53], asking the court to find as a matter of law that Progress is a "manufacturer" as that term is defined in N.D. Cent. Code § 28-01.3-01. Under North Dakota products liability law, the definition of "manufacturer" is defined by statute, and courts are not free to expand or limit the definition by relying on contrary common law.[54] As such, in order for Progress to be a manufacturer under North

---

[51] Doc. #80, p. 14.

[52] Doc. #92, p. 13.

[53] Doc. #77.

[54] Bornsen v. Pragotrade, LLC, 2011 ND 183, 804 N.W.2d 55. N.D. Cent. Code § 28-01.3-07.

Dakota products liability law, it has to come under the definition at N.D. Cent Code § 28-01.3-01(1), which provides:

> "Manufacturer" means a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer.

It is undisputed that Progress prepared the axle for sale to Detroit Edison for the purpose of installing it on a rail car for use in rail transportation. The court finds, as a matter of law, that Progress is a manufacturer under North Dakota products liability law and grants BNSF's motion for partial summary judgment.[55]

## IV. Whether BNSF is entitled to partial summary judgment on the issue of its own negligence.

BNSF moves the court for partial summary judgment, asking the court to find as a matter of law that it was not negligent, that no negligence by BNSF caused the derailment, that BNSF was not negligent with regard to inspection of the rail car, and that BNSF was not negligent in using an aging, well-used axle. The record before the court at this time is insufficient for the court to make such a finding.

The court has already indicated that the responsibility for inspection of the axle is an issue for the finder of fact. Clearly, the federal regulations require railroad entities to inspect the equipment to insure safety. Whether BNSF had the final responsibility for that inspection or whether it properly relied on Progress's adherence to federal regulations are questions of fact. Further, the parties have provided the court with deposition testimony

---

[55] Doc. #77.

and other evidence which provide alternative theories as to the cause of the failure of the axle, including whether Progress negligently prepared the axle or whether the axle was too old and unfit for use on a loaded coal car.

The court cannot find as a matter of law that BNSF was completely free of negligence that may have caused the derailment.[56] The motion for partial summary judgment[57] must be denied.

**V. Whether BNSF is entitled as a matter of law to partial summary judgment on the issues of superseding and intervening causes.**

"The determination whether certain conduct is a superseding, intervening cause is a question of fact."[58] A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact.[59] "The intervening negligence of another cannot be a superseding cause which extinguishes a tortfeasor's liability if that negligence was a foreseeable consequence of the situation created by the tortfeasor."[60]

Genuine issues of material fact remain as to whether Detroit Edison or BNSF committed any negligence subsequent to Progress's delivery of the axle to Detroit Edison. For example, BNSF's responsibility to inspect under the federal regulations is still at issue. As such, the court cannot find as a matter of law that BNSF is entitled to partial summary judgment on this issue.

---

[56] Accord APM, LLLP v. TCI Insurance Agency, Inc., 2016 ND 66, ¶ 8, 877 N.W.2d 34 ("Generally, negligence actions involve issues of fact and are inappropriate for summary judgement.").

[57] Doc. #81.

[58] Loper v. Adams, 2011 ND 68, ¶ 21, 795 N.W.2d 899.

[59] Id.

[60] Id. at ¶ 20.

**DECISION**

Progress's motion for summary judgment[61] and second motion for summary judgment[62] are **DENIED.** BNSF's motion for partial summary judgment[63] on the issue of whether Progress is a manufacturer under North Dakota law is **GRANTED.** BNSF's other motions[64] for partial summary judgment are **DENIED.**

**IT IS SO ORDERED.**

Dated this 16th day of August, 2016.

                                             /s/ Ralph R. Erickson
                                            Ralph R. Erickson, Chief District Judge
                                            United States District Court

---

[61] Doc. #62.

[62] Doc. #79.

[63] Doc. #77.

[64] Doc. #81 and Doc. #83.